IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD G. KIRBY,

      Petitioner,

vs                                       Cause No.: 1:08-cv-887 JB/DJS

ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

      Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

By *Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals and Prisoner Cases* [Doc. 5], entered October 6, 2008, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case.  For the reasons stated below, the Court recommends: (1) the *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* [Doc. 1], filed September 29, 2008, be dismissed with prejudice; and (2) the claims asserted in the *Petition for Coram Nobis* [Doc. 33], filed December 28, 2009, which the Court construes as a supplemental pleading, be dismissed as moot.

I.      BACKGROUND

Petitioner Richard G. Kirby ("Kirby") is a *pro se* prisoner litigant who seeks relief under 28 U.S.C. § 2254.  He alleges numerous claims challenging both his 2004 state court conviction for fraud

---

[1]Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

and the habitual offender sentence enhancement that was imposed in 2008.

### A.    State Court proceedings

The state court documents attached to Kirby's Petition indicate that after a jury trial on January 23, 2004, he was convicted of fraud, a fourth degree felony, in Grant County, New Mexico, based on evidence that on or about February through April 2002, he hired Loren Collett to design a website for him, and then failed to pay Collett.  [Doc. 1-1 at 1.]  Judgment against Kirby was entered on March 12, 2004, and he was sentenced to 18 months' incarceration followed by one year of parole.  [Doc. 1-2 at 1.]  Appeals ensued and the conviction was ultimately affirmed by the New Mexico Supreme Court in a published opinion dated June 13, 2007.  *State v. Kirby*, 141 N.M. 838, 161 P.3d 883 (2007); [Doc. 1-1 at 9–25].

Following affirmance of the conviction, the District Attorney of Grant County filed a Supplemental Criminal Information stating that Kirby was an habitual offender and that his sentence should therefore be enhanced in accordance with NMSA 1978, Section 31-18-17B.  [Doc. 16-1 at 7–8.]  The trial court judge agreed and entered an Amended Judgment, Sentence and Conviction on May 7, 2008, adding four years to Kirby's basic sentence, resulting in a total sentence of 5½ years' incarceration.  [Id. at 9–12.]  Kirby appealed the enhancement.

### B.    Federal habeas proceedings

While the appeal of the sentence enhancement was pending in state court, Kirby filed the instant petition for writ of habeas corpus on September 29, 2008.  [Doc. 1.]  Respondents filed a status report on February 9, 2009, and requested dismissal of the petition without prejudice on the grounds that Kirby's appeal of the sentence enhancement was still pending and that his available state court remedies had therefore not been exhausted.  [Doc. 16.]

On December 28, 2009, Kirby filed a "Petition for Coram Nobis" in this habeas proceeding

2

asserting that he had—since initiating this federal habeas action—exhausted the sentence enhancement issue by presenting it to the New Mexico Supreme Court, that it had been summarily denied on July 15, 2009, and that his motion for reconsideration had been denied on November 3, 2009.  [Doc. 33.]

Respondent filed an answer, pursuant to the Court's order, on August 13, 2010.  [Doc. 37.] Respondent then advised the Court that as of August 19, 2010, Kirby had completed both the original and enhanced sentences, as well as the period of parole associated with the fraud conviction.

## II.    MOOTNESS

Respondent suggests this case has been rendered moot by completion of the sentence.  [Doc. 38.]  Kirby denies that it is moot.  [Doc. 41.]  Mootness is a jurisdictional question.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  The Court therefore considers it first.

Kirby challenges (1) his 2004 fraud conviction and (2) the 2008 sentence enhancement.  The claims against the conviction are contained in the original Petition [Doc. 1], while the claims challenging the sentence enhancement are contained in the "Petition for Coram Nobis" [Doc. 33] filed 16 months later.  The Court construes the "Petition for Coram Nobis" as a supplemental pleading alleging additional claims.

### A.    The challenge to the conviction is not moot.

Contrary to Respondent's position, a habeas claim attacking a conviction does not become moot upon completion of the sentence.  The Supreme Court has held the collateral consequences that flow from a criminal conviction survive the expiration of the sentence and are sufficient to save a habeas petition from mootness.  *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968); *see also Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994) (holding that habeas petition was not moot despite completion of probation because possible collateral consequences could flow from misdemeanor conviction).  The collateral consequences include civil disabilities such as the right to vote, the right

to serve as a juror, and the right to hold certain offices. *Carafas*, 391 U.S. at 237. When a petitioner attacks a conviction, collateral consequences generally are presumed and need not be proven. *Spencer v. Kemna*, 523 U.S. 1, 14 (1998).

In this case, however, the presumption of collateral consequences does not necessarily lead to the conclusion that the case presents a live controversy. The record in this case, as well as other matters of which the Court may take judicial notice, indicates that Kirby has several other felony convictions all of which also presumably have collateral consequences. Thus, even if Kirby were to prevail in this case, he would not be relieved of the collateral consequences that flow from a felony conviction unless he also successfully attacked his other convictions. In other words, it is not clear that a favorable ruling in this matter would have any demonstrable effect on Kirby's status or that it would redress the collateral injury.

When it comes to convictions, however, the Tenth Circuit takes a broad view of the collateral consequences doctrine. *See Sule v. Warden, ADX Florence Colo.*, No. 97-1210, 133 F.3d 933, 1998 WL 10240 (10th Cir. Jan. 13, 1998) (unpublished table opinion). The Tenth Circuit adheres to the position that a case is moot only if there is "no possibility that any collateral consequences will be imposed on the basis of the challenged conviction." *Id.* at *2 (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)). Collateral consequences are not limited to a narrow set of legal disabilities such as being barred from holding office, voting, and serving as a juror, "but may be defined more broadly as the possibility of a legal consequence stemming from one's status." *Id.* Thus, the "mere possibility" of an adverse legal consequence is enough to preserve a case from mootness. *Id.* (quoting *Sibron*, 392 U.S. at 55). The imposition of a fine and the possibility of its return also has been held to constitute a collateral consequence sufficient to defeat mootness. *See Oyler*, 23 F.3d at 294 n.2 (citing *Nakell v. Attorney General*, 15 F.3d 319, 322 (4th Cir. 1994)).

4

Kirby's conviction carried a restitution requirement.  The Court concludes that the potential to vacate the restitution order combined with the mere possibility of lingering collateral consequences is sufficient to save the case from mootness with respect to the attack on the conviction.

**B.     The challenge to the sentence enhancement is moot**.

The Court reaches a contrary conclusion as to the sentence enhancement.  With regard to the sentence enhancement, the presumption of collateral consequences does not apply and Kirby bears the burden of proving sufficient collateral consequences.  *See United States v. Hernandez-Baide*, 146 F.App'x 302, 304 (10th Cir. 2005) (unpublished).

Kirby has not met this burden.  Absent a showing of collateral consequences, a habeas attack on a sentence becomes moot when the sentence expires during the course of the proceedings.  *Lane v. Williams*, 455 U.S. 624, 631–32 (1982).  Kirby has failed to articulate any collateral consequences of the sentence enhancement.  [Doc. 41.]  The Court therefore concludes that the habeas challenge to the enhanced sentence is moot and should be dismissed without prejudice.  *See Goodloe v. U.S. Parole Comm'n*, 346 F. App'x 340, 345 (10th Cir. 2009) (unpublished) (holding petition was moot where petitioner simply cited cases but failed to specifically state what collateral consequences he faced); *Kirby v. Janecka*, No. 09-2097, slip op. at 4–5, 379 F. App'x 781, 784 (10th Cir. 2010) (holding Kirby's challenge to sentence enhancement was rendered moot by completion of the sentence) (unpublished) (citing *Lucero v. McKune*, 340 F.App'x 552, 444 (10th Cir. 2009) (unpublished)).

In sum, the habeas challenge to the sentence enhancement is moot and the Court will recommend the claims contained in the Petition for Coram Nobis be dismissed.  The challenges to the conviction are not moot, and the Court will proceed to the merits.

## III.   LEGAL STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Kirby will be

entitled to habeas relief only if he can establish that the state courts' resolution of any claims adjudicated on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Any state-court factual determinations are presumed correct absent clear and convincing evidence to the contrary. *Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).

If a claim has not been "adjudicated on the merits" by the state courts, review by the federal habeas court is de novo. *Cone v. Bell*, __ U.S. __, 129 S.Ct. 1769, 1784 (2009).  Furthermore, if the state court addressed a claim under an improper legal standard, the Court is "unconstrained by AEDPA deference." *Revilla v. Gibson*, 283 F.3d 1203, 1220 n. 14 (10th Cir. 2002).

State prisoners also must satisfy an exhaustion requirement.  The applicant generally may not raise a claim for federal habeas corpus relief unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To exhaust a claim, a habeas applicant must pursue it through "one complete round of the State's established appellate review process," giving the state courts a "full and fair opportunity" to correct alleged constitutional errors. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The claim must be presented to the state courts in such a manner that the court is alerted to its federal nature. *Baldwin v. Reese*, 541 U.S. 27, 31 (2004).  The Court may, however, deny a claim on the merits in some circumstances notwithstanding the applicant's failure to exhaust. 28 U.S.C. § 2254(b)(2); *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002) (holding that individual, unexhausted claims may be denied if the result allows the court to deny the entire petition on the merits).

**IV.    ANALYSIS**

6

**A.      Timeliness**

Applications for the writ are subject to a one-year statute of limitations.  22 U.S.C. § 2244(d)(1).  Though Kirby continued to attack his conviction by filing motions in the trial court, the judgment in his case arguably became final on July 17, 2007, when the New Mexico Supreme Court issued its mandate affirming his conviction.  He filed this habeas action on September 29, 2008, over one year later.  Kirby implicitly acknowledges potential timeliness problems by asserting that the limitations period should be tolled.  [Doc. 1 at 22.]  Respondent, however, has not raised the timeliness issue.

A statute of limitations defense is not jurisdictional and the Court is thus under no obligation to raise a time bar *sua sponte*.  *Day v. McDonough*, 547 U.S. 198, 209 (2006).  After reviewing the petition, the Court concludes that the interests of justice are best served by deciding this matter on the merits rather than attempting to determine without benefit of briefing whether the application is time-barred.

**B.      Petitioner's Grounds for Habeas Relief**

**1.      Due Process - Fair Warning**

Kirby claims the fraud conviction violates his due process rights because it involved an unforeseeable interpretation of the law.  Additional background is necessary to understand this claim.

**a.      Factual and procedural background**

Kirby owned a small business.  He hired the victim, Loren Collett, to design and develop a website and the two entered into a website design contract under which Kirby was to pay Collette $1,890 for his design services.  Collett provided the designs and incorporated them into Kirby's website, but Kirby did not pay him.  [Doc. 1-1 at 10.]  When Collett allegedly changed the password to prevent Kirby from utilizing the designs, Kirby, who claims he was the "designated administrator"

of the website, had the web space provider reset the password thereby blocking Collett's attempts to secure the designs pending payment for services.  [Id.; Doc. 1-2 at 8.]

The jury was instructed that to find Kirby guilty of fraud, the State had to prove the following three elements beyond a reasonable doubt: (1) Kirby intended to "deceive or cheat" Collett; (2) Kirby had "obtained a website"; and (3) the website belonged to someone other than Kirby.  [Doc. 1-1 at 11.] Kirby's challenge centers on the third element:  whether the website belonged to someone other than him.  Kirby claims he, not Collett, was the owner of the website.  Therefore, according to Kirby, he could not be convicted of stealing a website that he himself owned.

This claim was first presented to the New Mexico Court of Appeals ("NMCOA") on direct appeal as a sufficiency of the evidence claim.  Kirby argued that because he owned the domain name and had contracted with the website hosting service to buy the storage space to display the website, he was the owner of the website and Collett was not.  The NMCOA was not persuaded by the argument.  It reasoned that the term "website" includes the web pages, Collett had designed the web pages, and that Kirby never paid Collett as promised.  The NMCOA thus concluded that the evidence was sufficient to establish that Kirby obtained a website belonging to someone else.  [Doc. 1-1 at 2–3.]

The New Mexico Supreme Court granted certiorari to consider the question "who is the owner of the website under these circumstances, the website designer or the person who hires the designer and for whom the website is developed." *State v. Kirby*, 141 N.M. at 840, 161 P.3d at 885; [Doc. 1-1 at 10.]  After considering principles of copyright law and the contract between Kirby and Collett "in the unfamiliar context of the internet," the New Mexico Supreme Court held that "in most circumstances, unless expressly agreed otherwise, it is the creator of the web pages that are displayed on such sites." *State v. Kirby*, 141 N.M. at 839–40, 161 P.3d at 884–85;  [Doc. 1-1 at 10, 12.]  In so holding, the New Mexico Supreme Court affirmed Kirby's conviction. *State v. Kirby*, 141 N.M. at

839–40, 161 P.3d at 884–85.

Kirby filed a petition in the trial court challenging the constitutionality of the New Mexico Supreme Court's decision.  [Doc. 1-2 at 5–15 ("Petition to Modify, Reduce or Vacate Conviction and Sentence to Meet Constitutional and Statutorial Requirements and Judicial Notice".]  The trial court denied the petition, concluding it did "not sit in review of the New Mexico Supreme Court[.]"  [Id. at 1–2.]  Kirby moved the trial court to reconsider; that motion was also denied.  [Id. at 3–4.]

Kirby appealed the trial court's decision to the NMCOA.  [Doc. 1-2 at 18–24.]  In his appeal, he challenged the constitutionality of the New Mexico Supreme Court's ruling on the website ownership issue by arguing that the Supreme Court's interpretation deprived him of fair and adequate notice that his conduct was criminal.  The NMCOA construed his appeal as requesting habeas corpus relief because it advanced a post-conviction argument that the conviction must be vacated on the grounds that it is constitutionally infirm.  [Id. at 41–42.]  It transferred the case to the New Mexico Supreme Court, which has exclusive jurisdiction over state habeas actions.  [Id. at 40.]  The New Mexico Supreme Court also characterized Kirby's appeal as a petition for writ of habeas corpus and summarily denied it on August 8, 2008.  [Id. at 45.]

### b.    Merits

Kirby argues that he "was convicted of a new and novel principle of law in violation of due process that neither the statute nor any prior judicial decision has fairly disclosed to be within the statute's scope."  [Doc. 1 at 4.]  According to Kirby, the New Mexico Supreme Court's decision in *State v. Kirby* set forth the novel principle that the owner of the copyright—Collett—was the owner of the website, and that this purportedly novel interpretation was so unforeseeable that it constitutes a violation of due process.  [Id. at 6.]

Kirby's argument invokes the principle that "a state court's retroactive application of an

unforeseeable interpretation of state law may deprive a criminal defendant of due process." *Hawkins v. Mullin*, 291 F.3d 658, 663 (10th Cir. 2002).  This concept derives from the basic principle that a criminal statute must give fair warning of the conduct that it makes a crime.  *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964).  A "deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie*, 378 U.S. at 352.  The standard to be applied when considering a fair warning challenge to a court's construction of a criminal statute is whether the construction is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." *Hawkins*, 291 F.3d at 664 (quoting *Bouie*, 378 U.S. at 354).  If so, it may not be given retroactive effect.  *Id.*

To begin the analysis, it is important to note that the correctness of the New Mexico Supreme Court's ruling is not at issue.  *Hawkins*, 291 F.3d at 662 (stating that federal habeas court is bound by state court's interpretation of its own law).  The only question is whether the ruling, as it applied to Kirby, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  The New Mexico Supreme Court's disposition of Kirby's state habeas position, though summary, qualifies as a disposition on the merits and is therefore entitled to deferential review.  *Aycox v. Lytle*, 196 F.3d 1174, 1177–78 (10th Cir. 1999).

Kirby's claim fails for two reasons: first, the New Mexico Supreme Court's opinion in *State v. Kirby* does not constitute judicial construction of a statute, nor does it expand criminal liability; and second, even if the decision could be viewed as expanding criminal liability, it was entirely predictable in light of previous published decisions.  The Court concludes that it therefore was neither contrary to, nor an unreasonable application of, clearly established federal law.

10

First, *Bouie* prohibits retroactive application of "a judicial construction of a criminal statute." *Bouie*, 378 U.S. at 354.  "Generally, '[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'"  *Johnson v. Kindt*, 158 F.3d 1060, 1062 (10th Cir. 1998) (internal quotation marks and alteration in original) (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994)).  The New Mexico Supreme Court's opinion in *State v. Kirby* does not meet this definition.  It does not purport to construe the fraud statute, much less to expand its scope.  Although the opinion addressed a "novel area of law," it did nothing more than apply familiar legal principles.  The opinion merely states there was sufficient evidence to conclude that Collett was the owner of the website in light of his contract with Kirby, general copyright principles, and internet law.  The *Bouie* fair warning doctrine is thus not implicated here.

*Bouie* and the cases applying it illustrate the difference between this case and those that involve an actual judicial enlargement of a criminal statute.  In *Bouie*, the defendants were participating in a "sit-in" demonstration and were convicted of criminal trespass for refusing to leave a luncheonette after being asked to leave.  *Bouie*, 378 U.S. at 348–49.  The South Carolina trespass statute at issue prohibited the conduct of entry upon lands of another after notice prohibiting such entry.  In affirming the convictions, the South Carolina Supreme Court construed the statute to cover not only the act of entry, but also the act of remaining on the premises after receiving notice to leave.  *Id.* at 350.  The United States Supreme Court held the South Carolina courts' construction of the trespass statute deprived the defendants of due process because they did not violate the statute as written and there "was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave."  *Id.* at 355.  Several other cases illustrate the application of the *Bouie* principle to state court decisions construing a statue.  *See, e.g.*, *Evans v. Ray*,

390 F.3d 1247 (10th Cir. 2004) (examining state court decision that retroactively applied construction of child abuse murder statute to require only general intent rather than specific intent); *McDonald v. Champion*, 962 F.2d 1455 (10th Cir. 1992) (examining state court decision that retroactively applied interpretation of felony-murder statute to including underlying crime of attempted robbery).

In each of these cases, a due process concern arose because the state court interpreted a criminal statute in a manner that expanded criminal liability to include conduct that was not previously within its scope.[2] This case, by contrast, does not involve construction of a criminal statute, nor does it criminalize conduct that was not already prohibited prior to the decision. In *State v. Kirby*, the New Mexico Supreme Court did not in any way alter the meaning of the statute or expand the reach of criminal liability. The meaning of the statute remained the same after the decision; it was unlawful before *State v. Kirby* to obtain a website by fraudulent means, and it remained so afterward. In short, the opinion does not apply a novel construction as Kirby claims; it merely applies the existing statute to a novel circumstance, *i.e.*, theft of a website.

The due process fair warning claim fails for a second reason: the New Mexico Supreme Court's decision that the designer of the web pages is the "owner" of the website on which they are displayed is neither unexpected nor indefensible. The focus of a due process fair warning inquiry is whether the state court's interpretation of a criminal statute was foreseeable. *Hawkins*, 291 F.3d at 663; *Lopez v. McCotter*, 875 F.2d 273, 277–78 (10th Cir. 1989) (examining state court decision which unforeseeably held that foreign bail bondsman was subject to criminal liability unless he complied with Uniform Criminal Extradition Act). Kirby claims he believed he was the owner of the website

---

[2]While it is true that not every *Bouie* challenge involves a statute, a *Bouie* challenge does at a minimum involve an alteration to some previously well-established principle of criminal law. *See, e.g., Bland v. Sirmons*, 459 F.3d 999, 1017 (10th Cir. 2006) (addressing Oklahoma court's adoption of new evidentiary standard that warrants jury instruction on lesser homicide offense).

because he was the "designated administrator" and "exclusive confidential owner of the access password." [Doc. 1-2 at 8.] This argument assumes ownership is an either-or proposition, *i.e.*, that either Kirby owned the website or Collett did. It fails to recognize that even if Kirby possessed some attributes of ownership, Collett also may have had an ownership interest in the same website. Under New Mexico law, "property includes every interest a person may have in a thing that can be the subject of ownership, including the right to enjoy, use, freely possess and transfer that interest." *Muckleroy v. Muckleroy*, 84 N.M. 14, 15, 498 P.2d 1357, 1358 (1972).

Given this broad definition of property under New Mexico law, it was entirely foreseeable that New Mexico courts would conclude Collett had an ownership interest in the website because he designed or held the copyright to the pages that were displayed on it. Thus, Kirby could have expected that by excluding Collett from the website, he took property that belonged to another and could be held criminally liable for that conduct. Although the New Mexico Supreme Court employed a somewhat different rationale to reach this conclusion, the Court does not believe the different rationale vitiates the foreseeability of the result. Under the deferential AEDPA standard, the New Mexico Supreme Court's adjudication of Kirby's claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law.

## 2. Due Process - Vagueness

Ground two is a related due process claim—that the New Mexico fraud statute is vague as applied to him. Kirby argues that "[n]either the statute nor any prior judicial decision provided [him] a fair warning or notice...that the ownership of the copyright was equivalent to converting the ownership of the website to the copyright owner." [Doc. 1 at 8.] This argument likewise is without merit.

The void-for-vagueness doctrine provides that a penal statute must "define the criminal offense

with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  As stated in *Bouie*, a statute can be void for vagueness not only on its face, but as applied, as a result of "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie*, 378 U.S. at 352.  The Court considers an as-applied challenge in light of the charged conduct.  *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009).

As discussed above, the Court disagrees that Kirby did not have fair warning that his conduct could subject him to criminal liability.  The statute states that "[f]raud consists of the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations." NMSA 1978, § 30-16-6A.  The only aspect of the statute under challenge here is the "belongs to another" element.

Kirby's argument that the statute is vague as applied to him because the New Mexico Supreme Court had never before addressed the concept of ownership in the context of a website is not persuasive.  The statute is not vague merely because the conduct Kirby perpetrated is novel in the published jurisprudence of New Mexico.

"Objections to vagueness under the Due Process clause rest on lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  A person of ordinary intelligence would understand that the designer of the web pages has an ownership interest in the website on which the pages are displayed.  As the New Mexico Supreme Court observed, the website essentially consists of the pages that are displayed on it, and are what give the website substance and value.  *State v. Kirby*, 141 N.M. at 842, 161 P.3d at 887.  Even if Kirby owned the domain name and the webspace, Collett owned the designs and the copyright to the pages displayed on the website.  By blocking

14

Collett from accessing the website before paying him for the designs, Kirby should have known that his conduct was at risk for criminal liability. The New Mexico Supreme Court's adjudication of Kirby's claim therefore was not contrary to, nor did it involve an unreasonable application of clearly established federal law.

### 3. "Subject matter jurisdiction"

Kirby characterizes his third claim as attacking the New Mexico court's subject matter jurisdiction. The substance of the claim is that venue in New Mexico was improper because the server that hosted the website is located in Massachusetts. Kirby argues that the "changing of the password can only occur at the domicile of the ISP server...located in Massachusetts." [Doc. 1 at 9.] He thus incorrectly reasons that the crime could only be prosecuted in Massachusetts, not in New Mexico. [Doc. 1-2 at 26–27.]

The constitutional basis of this claim is not apparent. Regarding venue, the Constitution of the United States requires trials to be held in the state where the crime was committed. U.S. Const. art. III, § 2, cl. 3. It was long ago determined, however, that this constitutional "provision has reference only to trials in the federal courts; it has no application to trials in the state courts." *Nashville, C & St. L. Ry. Co. v. Alabama*, 128 U.S. 96, 105 (1888).

The Court has been unable to find any clearly established federal law that prohibits state courts from fixing the venue of criminal prosecutions in a location other than where the crime was committed. To the contrary, the United States Supreme Court has held that states may prosecute crimes only a part of which occur within their borders, or even if committed outside the state, affect persons or property within the state. *See Strassheim v. Daily*, 221 U.S. 280, 285 (1911) (holding state is justified in punishing acts committed outside its jurisdiction but that are intended to and produce detrimental effects within it); *Buffo v. Graddick*, 742 F.2d 592 (11th Cir. 1984) (holding that Alabama

state court could exercise jurisdiction over crime of falsely appraising California property in California where petitioner knew that submission of false appraisal would have effects in Alabama).

Furthermore, it is far from clear that the crime was not committed in New Mexico.  Both Kirby and the victim resided in New Mexico, had their computers in New Mexico, and Kirby presumably initiated the password change from New Mexico.  [Doc. 1-2 at 27.]  The location of the server would appear to be irrelevant when the perpetrator, the victim, and the fraudulent acts all were located in New Mexico.

Kirby supports his argument with a copy of a grand jury indictment filed in the United States District Court for the Central District of California in the case of *United States of America v. Lori Drew*.  [Doc. 1-2 at 30–39.]  In that case, Defendant Lori Drew is charged with federal counts of conspiracy and fraudulent computer activity [Id.]  The charges arise out of a much-publicized "cyberbullying" case involving the suicide of a teenage girl in Missouri.  The defendant Lori Drew, an adult woman, allegedly established a MySpace account and profile purporting to be a for a teenage boy.  The alleged purpose of the conspiracy was to use the false profile first to woo and then to harass and embarrass the teenage girl.  Kirby draws support for his claim from the fact that Drew was indicted in California where the internet service provider for MySpace is located, even though both Drew and the suicide victim lived in Missouri.

The indictment in *United States v. Drew*:  (1) is an indictment, not legal authority, and (2) involved federal conspiracy and computer crimes.  It has no bearing on whether New Mexico is the proper venue for prosecuting state law fraud.  The Court concludes that the prosecution of the crime in New Mexico was neither contrary to, nor did it involve an unreasonable application of clearly established federal law.

**4.    Sufficiency of the evidence:  ownership of the website**

Kirby argues the State "failed to produce any evidence that someone other than the Petitioner owned the website." [Doc. 1 at 11.] The standard applicable to a sufficiency of the evidence claim on habeas review is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Review under this standard is "sharply limited." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (citations and internal quotation marks omitted).

Both the NMCOA and the New Mexico Supreme Court considered this argument on the merits. Applying the standard set forth in *Jackson*, the NMCOA concluded that evidence the victim designed the web pages and that Kirby did not pay him was sufficient to establish this element of the offense. [Doc. 1-1 at 2.] Citing *Sublett v. Wallin*, 136 N.M. 102, 94 P.3d 845 (N.M.Ct. App. 2004), the NMCOA observed that the term "website" includes the web pages, and evidence that Collett designed the web pages and Kirby never paid him as promised was sufficient evidence to convict. [Id. at 2–3.]

The New Mexico Supreme Court agreed. *State v. Kirby*, 114 N.M. 838, 161 P.3d 883; [Doc. 1-1 at 22.] It noted there was evidence consisting of the contract between Collett and Kirby, testimony that Collett owned the computer programming that made the web pages viewable, and testimony that Kirby changed the password and locked Collett out of access to his copyrighted pages. The New Mexico Supreme Court concluded that based on this evidence, a rational jury could have concluded that Collett owned the website and its contents, and that Kirby had therefore committed fraud by taking property that belonged to someone other than himself. [Id.] The Court concludes that this determination was a proper application of *Jackson* based on the facts of this case. It was neither contrary to nor an unreasonable application of federal law.

     **5.**     **Restitution**

17

The judgment against Kirby included a restitution order of approximately $2,000.  He challenges the restitution order apparently on the grounds that because the New Mexico Supreme Court relied on copyright law in upholding his conviction, the restitution award should be determined with reference to copyright principles.  [Doc. 1 at 13; Doc. 1-2 at 12–14.]  The restitution claim is not cognizable under section 2254.  *Kirby v. Janecka*, No. 09-2097, 379 F.App'x at 783 (citing *Erlandson v. Northglenn Muni. Court*, 528 F.3d 785, 788 (10th Cir. 2008)).

### 6.       Failure to Disclose Expert

Kirby's sixth claim is that his due process rights were violated by the prosecution's failure to disclose that a fact witness, Rob Narvaez, would also be called upon as an expert to give testimony as to the value of the web page work.  [Doc. 1 at 14.]  Kirby raised this claim on direct appeal.  The NMCOA rejected the argument stating that Mr. Narvaez was listed as a witness, that Kirby had the opportunity to interview him to determine the contours of his testimony, and that Kirby could have anticipated that someone would testify about value because it is an element of the charged offense.  [Doc. 1-1 at 5.]  Ultimately, however, the NMCOA held the claim had not been preserved for review because Kirby failed to object to Mr. Narvaez's testimony at trial.  [Id.]  Accordingly, the claim is procedurally defaulted and therefore not reviewable on habeas notwithstanding the NMCOA's discussion of the merits.  *Harris v. Reed*, 489 U.S. 255, 262, 264 n.10 (1989).

Furthermore, if the Court were to review the claim, it would find it meritless.  "A constitutional due process violation arises when a criminal trial lacks fundamental fairness to the degree it is 'shocking to the universal sense of justice.'"  *Reali v. Abbot*, 90 F. App'x 319, 324 (10th Cir. 2004) (unpublished) (quoting *United States v. Russell*, 411 U.S. 423 (1973)).  The purported failure to designate as an expert a witness who opines as to value is not error of constitutional magnitude.  Depending on the circumstances, it may not constitute error at all.  *See Whitley v. State*, 36 N.M. 248,

13 P.2d 423 (1932) (holding that non-experts with requisite knowledge may testify as to value). Accordingly, allowing Mr. Narvaez to opine as to value did not violate Kirby's due process rights to a fair trial.

### 7.      Ineffective Assistance of Counsel

Kirby's seventh claim is that the attorney who represented him before trial, Mr. Runyan, was ineffective in that he "did not inform Petitioner that Judge Jeffreys was the judge on the case in a timely manner for Petitioner to exercise his option of recusal [sic]."[3]  [Doc. 1 at 15.]  Kirby raised this claim on direct appeal and the NMCOA addressed and rejected it on the merits.  [Doc. 1-1 at 6–7.]

To establish an ineffective assistance of counsel claim warranting habeas relief, the petitioner must show that counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness, and that he was thereby prejudiced.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The key question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* Review of ineffective assistance claims under the AEDPA is "doubly deferential" in that the habeas court defers to the "state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how best to represent a client."  *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009) (citation omitted).

Here, the allegedly deficient conduct was Mr. Runyan's failure to inform Kirby that the judge assigned to the case was Judge Jeffreys in time for Kirby to excuse Judge Jeffreys.  Kirby claims the reason he wanted to excuse Judge Jeffreys is that Judge Jeffreys "had previously threatened to throw

---

[3]Kirby presumably is referring to the statutory right to exercise a peremptory challenge to the district judge assigned to hear a case.  NMSA 1978, § 38-3-9.  Under the current version of the New Mexico Rules of Criminal Procedure, the right to excuse a judge must be exercised within ten days after the later of:  (1) arraignment or filing of waiver of arraignment; (2) service by the clerk of notice of assignment of the case to a judge; (3) completion of publication of mass reassignment; or (4) filing of notice of appeal from a lower court.  NMRA 5-106D.

Petitioner out of the courtroom in another, unrelated matter." [Doc. 1 at 3.] The NMCOA found that the facts necessary to a full determination of the claim were not of record, but noted that Kirby was represented by a different attorney at trial, and that there was no evidence to indicate the jury's verdict would have been different had Judge Jeffreys been disqualified from presiding at trial.

The Court defers to the NMCOA's determination, and further notes that it is supported by Kirby's failure to point to any evidence that Judge Jeffreys was unfit in some manner to preside over the trial. In short, there is no indication that Kirby was prejudiced by Mr. Runyan's alleged failure to excuse Judge Jeffreys, and the claim is therefore not grounds for habeas relief.

### 8.      Limitations on Witness Testimony

Kirby claims the testimony of two defense witnesses was "unfairly limited by the trial court." [Doc. 1 at 17.] He has submitted affidavits from these two witnesses: Ginger Grissom and Alfred Zent. [Doc. 1-3.] Kirby raised this claim on direct appeal, but the NMCOA concluded it had insufficient information to evaluate it. [Doc. 1-1 at 7.] It declined to grant a new trial on the basis of this claim because he failed to specify the limitations, did not indicate whether he objected at trial, and the affidavits were not matters of record. [Id.]

It appears from the NMCOA's discussion of this claim that Kirby may have failed to exhaust it. The exhaustion requirement is not met if he failed to provide allegations and supporting evidence sufficient to present the reviewing court with a fair opportunity to apply controlling legal principles. *Thomas v. Gibson*, 218 F.3d 1213, 1221 n.6 (10th Cir. 2000). The Court nevertheless exercises its discretion to deny this claim on the merits, despite the apparent failure to exhaust. 28 U.S.C. § 2254(b)(2); *Moore*, 288 F.3d at 1235 (holding that individual, unexhausted claims may be denied if the result allows the court to determine the entire petition on the merits).

The Court concludes the statements in the two affidavits do not provide grounds for habeas

relief.  Both witnesses protest they were not allowed to fully present evidence they believe tends to negate fraudulent intent.  Ginger Grissom's affidavit states she was not permitted to give complete answers on cross-examination but was limited to "yes" and "no" responses; that her testimony on direct examination was interrupted by objections from the prosecution; that Judge Jeffreys sustained hearsay objections to some of her testimony; and that he refused to admit certain emails that she wanted the jurors to read.  The effect of these limitations, according to Ms. Grissom, was that her testimony was incoherent and a "false picture" was presented to the jury  [Doc. 1-3 at 1–5.]

Alfred Zent's affidavit states that he testified only briefly, but his testimony was interrupted by numerous bench conferences.  He also complains the trial judge did not allow his testimony to be supported by documentation.  Specifically, he claims he would have shown the jury documents to the effect that he owned $600 million in letters of credit which he had assigned to Kirby for use as collateral, but that a bank was "illegally" detaining the letters of credit thereby making them inaccessible to Kirby.  [Doc. 1-3 at 6–9.]

These alleged rulings and conduct do not individually or cumulatively amount to constitutional violations.  Bench conferences, objections, and interruptions are normal occurrences in a jury trial. That witness testimony is cabined on cross-examination is simply a feature of the adversarial process. The witnesses were allowed to testify on direct examination and there is no indication that defense counsel was ineffective in the manner in which he handled the witnesses or the objections, or that any of the trial court's evidentiary rulings were in error.  None of the evidentiary rulings are the basis of any of Kirby's other claims.  In short, the Court discerns nothing from the affidavits that suggests the trial was fundamentally unfair.

### 9.   Sufficiency of the evidence: value of the website

Kirby argues that the evidence was insufficient to show that the website had a market value

of over $250.  According to Kirby, the "only testimony went to the value of the work on the website and not to the value of the website itself."  [Doc. 1 at 18.]  The NMCOA rejected this argument.  It noted that Kirby had agreed to pay Collett $1,890 for designing the web pages and that Narvaez testified the work Collett provided was worth $600 to $700.  As stated above, review of sufficiency of the evidence claims is sharply limited and confined to determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (emphasis in original).

Kirby does not dispute there was evidence presented as to the value of the services Collett provided, including evidence of the amount Kirby agreed to pay him.  Thus, even if there were no evidence as to the value of the website itself, a rational jury could reasonably infer that the value of the website was at least equal to the value of the design services.  They could infer, in other words, that Kirby would not have agreed to pay more for design services than the website would be worth.  The Court therefore concludes that the NMCOA's determination was a proper application of *Jackson* based on the facts of this case.  It was not an unreasonable determination of the facts or contrary to clearly established federal law.

### 10.    Fraud based on unfulfilled promises

Kirby claims his conviction violates due process principles because a fraud conviction cannot be based on unfulfilled promises or statements as to future events.  [Doc. 1 at 19.]  The NMCOA considered and rejected this claim.  Relying on state law, it observed that "an action for fraud ordinarily will not lie as to a pattern of conduct based on future events that will take place" but that there are several exceptions to this general rule, including a promise that is part of an overall pattern designed to lead a party to act to his or her detriment.  [Doc. 1-1 at 3.]  The NMCOA then held there was sufficient evidence for a jury to conclude Kirby acted with intent to deceive and cheat Collett.

22

[Id. at 3–4.]

Despite Kirby's characterization of this claim as a due process violation, the Court concludes that it is an issue of state law, and as such, not reviewable on habeas.  Even if the NMCOA's determination that fraud cannot be premised on unfulfilled promises were in error, on which question the Court expresses no opinion, habeas does not lie to correct errors of state law or "to reexamine state-court determinations on state-law questions." *McCormick v. Kline*, 572 F.3d 841, 850 (10th Cir. 2009) (quoting *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475 (1991)).

## V.      RECOMMENDATION

The Court recommends:

(1) the *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* [Doc. 1], filed September 29, 2008, be dismissed with prejudice; and

(2) the claims in the *Petition for Coram Nobis* [Doc. 33], filed December 28, 2009, which the Court construes as a supplemental pleading, be dismissed as moot.


**DON J. SVET**
**United States Magistrate Judge**

23